## Church *versus* Church.

Where husband and wife convey the land of the wife, by a deed absolute on its face, but really in trust for the wife, and the trustee, by the connivance or participation of the husband, conveys the estate to a stranger, who has no notice of the trust, and the husband afterwards purchases the property thus conveyed, he will hold the same as a trustee, for his wife and her heirs.

In such case he cannot protect himself by the equity of his immediate vendor, who was a *bonâ fide* purchaser for value, without notice of the trust.

It is immaterial whether the consideration received by him for violating the trust was equal to that paid by him on the repurchase of the estate, or whether he purchased with the profits arising from the original wrong, or with other funds; in either case, the instant the estate came back into the hands of the wrongdoer, the original equity attached.

Where upon proof of loss of a deed, secondary evidence of its contents has been admitted, it is not error for the Court to instruct the jury that, if they believe the deed was within the power of the party, the presumption of law is, if the deed were produced it would make against him.

ERROR to the Common Pleas of *Greene county*.

This was ejectment for 190 acres of land, part of a tract which had been originally surveyed on a Virginia certificate, for 400 acres, to Robert McClelland, who, by his will proved on the 10th day of July, 1791, demised the same to his two grand-daughters, Elizabeth and Jane Archer. Elizabeth was married to Timmans, and Jane, in 1796 or 1797, to Henry Church. Lazarus Timmans and wife sold their part of the land to a man by the name of James Morris, who died shortly after, and before any conveyance was made to him. Morris, and Church in right of his wife, made a partition of the land, by which the part in dispute was allotted to Jane Church in severalty. On the 16th February, 1799, Church and wife, and Timmans and wife, joined in a conveyance to Joseph Archer, who was the uncle of Elizabeth and Jane. This deed was absolute upon its face, but the plaintiffs alleged that it had been made for the more convenient patenting of the land, and that Archer held it but as a trustee. The deed was alleged to be lost, and secondary evidence of its contents was given. The plaintiffs also alleged that Jane Church was a minor at the time she executed the deed, which was a disputed fact in the cause. Joseph Archer, on the 25th of August, 1800, took out a patent for the land which contained the following recital: "The said Lazarus Timmans and Elizabeth his wife, and Henry Church and Jane his wife, by deed dated 16th February, 1799, conveyed the above described tract of land to the said Joseph Archer, to whom a warrant of the acceptance of the said survey issued 28th October, 1799." It was alleged that Joseph Archer had exchanged a tract of land lying below Waynesburg, with Henry Church for this land, which Church afterwards

[Church v. Church.]

sold to a man by the name of Porter, but his wife did not join in the conveyance. On the 4th April, 1813, Joseph Archer conveyed the land in dispute to James Hook, who, on the 10th April, 1815, conveyed the same to John Craig; and on the 2d of March, 1826, John Craig and wife conveyed it to Henry Church for the consideration of $1800. Recorded 10th October, 1836. Jane Church had several children, some of whom are the plaintiffs in this suit. She died in 1816. Henry Church was married a second time, and had children by his second wife, to whom he devised the land, and who are defendants in this action. He died in 1851.

The questions raised upon the record will sufficiently appear from the points submitted by the counsel of the parties, and the answers of the Court to the same.

Plaintiff's 1st and 2d points:—

"1. That as the deed alleged to be lost by defendants is shown to have been in their possession some ten years since, at a time when they so much doubted the title derived therefrom, as to have employed counsel to examine the same, and not having been recorded or produced on the trial, is strong evidence that the deed is not such an one as would vest any title in Joseph Archer or Henry Church.

"2. If the jury believe that the alleged lost deed has not been satisfactorily accounted for by defendants, and that the same is still within their power, the presumption of law is that if the deed was produced it would be evidence against them."

Defendants 3d, 5th, and 6th points:—

"3. That if a trust estate, which did not appear on the face of the title to be so, passes through several innocent purchasers, and again comes into possession of one of the *cestui que trusts* for a full consideration; upon such reacquisition of title the trust will not attach.

"5. That if Hook or Craig, or either of them, purchased or held the land in dispute freed from the alleged trust, that the sale by Craig to Church vested the title in said Church as free from the trust as either Hook or Craig held it.

"6. That if Hook, or Craig, or Church, or either of them, held the land in dispute freed from the alleged trust, the will of Henry Church vested a good title in the defendants, and plaintiffs cannot recover."

To these points the Court (GILMORE, P.) answered as follows:—

"The 3d, 5th, and 6th points of defendants will be answered together. We see no good reason why the principle recognised in answer to the previous points should not be extended to Henry Church, who, in case the deed was in trust, was a *co-cestui que trust* with his wife, Jane Church. But we charge you that if he purchased back the original trust property, by means which he

[Church *v.* Church.]

had derived from a sale or exchange of the trust property, he can by no means be considered an innocent purchaser unaffected by the trust, and this will be the case whether these means were derived mediately or immediately from this source.  We mean by this that if this deed was a trust deed, and Henry Church afterwards participated in violation of the trust by receiving in exchange the property east of town for the trust property, and afterwards sold this property, and realized the price of it to an amount sufficient, or nearly so, to pay for the land in dispute, he, Church, must then be considered as holding this property subject to the original trust; and this will be the case, although the jury should believe that money derived from other sources had been used in the repurchase of the land in dispute.  It is sufficient if he had sold the exchange land and realized the price, and that to an amount sufficient, or nearly so, to pay for the repurchased property.  There is no evidence here what the exchange property was sold to Porter for; but there is evidence that when the property was exchanged, the property in dispute was valued at £50 more than the property east of town.

" If the property was bought back for the purpose of fulfilling the original alleged trust, of which there is some evidence, it would obviate the necessity of giving any answer to these points.

" We answer defendant's 4th point in the affirmative.

" To the plaintiff's points we answer :—

" 1 and 2. These are matters for your consideration.  If you believe the deed is not destroyed or lost, and is still in the possession of the defendants, the presumption is, that, if produced, it would make against them."

The answers to these points were the errors assigned in this Court.

*Downey*, *Lindsay*, and *De Ford*, for plaintiff in error.—1st error: The Court erred in submitting to the jury whether the deed was lost, or whether in party's power to produce it.  This was a *preliminary* question for the Court: 1 *Green. Ev.* § 558; 1 *Stark. Ev.* 154; 15 *Pick.* 368; 8 *Pick.* 389; 4 *Cowen* 483; 11 *Wend.* 600; 9 *W. & Ser.* 75.  2d error: The deed to Joseph Archer was absolute.  Another tract was given in exchange, as the testimony shows.  It is destroying written title by parol evidence.  It is the lowest kind of evidence.  See 1 *Green. Ev.* § 200; *Sug. on Vend.* 174.  The proof to raise a trust should be clear and indisputable.  If Archer held as trustee, the violation of the trust was by him, and not by Henry Church: 7 *Watts* 107; 10 *Ves.* 505; 7 *W. & Ser.* 238.

If none of the proceeds of Jane Church went into the repurchase of the land, her heirs would have no interest: *Story's Eq. Jur.* § 1259; 10 *Harris* 16.  Hook took it discharged of the

[Church v. Church.]

alleged secret trust, and Henry Church is protected by Hook's title: *Amb.* 313; 1 *Ser. & R.* 379; 1 *John. Ch. R.* 213; 4 *W. & Ser.* 102; *Id.* 251; 10 *Watts* 354.

*Black*, *Phelan*, and *Buchanan*, for defendant in error.—1st error: The sufficiency of the proof to let in secondary evidence of a lost deed was for the Court—the wilful suppression of that deed was quite another. Even if the Court was wrong, it did no injury, as the case turned on other matters.

2d error: The sufficiency of the evidence to raise a trust was for the jury. Church sold nothing more than his life estate to Archer, all he could convey. Equity will follow the money raised from a sale of land: 3 *W. & Ser.* 280; *Id.* 273; *Story's Eq. Jur.* § 1259; 10 *Harris* 16; 3 *W. & Ser.* 520. Henry Church was the trustee of his wife and children. In this case he would be a trustee *ex maleficio*: 3 *Barr* 319. He cannot shelter himself behind Hook or Craig, whose title intervened: 1 *Vern.* 60; 1 *Cruise*, *Title* 13, chap. 4, § 12; 1 *Hill on R. E.* 319; 12 *Vesey* 372; *Hill on Trustees* 159; 2 *Story's Eq.* § 1261.

The opinion of the Court was delivered by

LEWIS, C. J.—At common law the husband represents the wife's estate as tenant by the curtesy initiate. He might do homage to the lord without joining his wife. He may appoint an attorney for both in actions brought against them in respect to the land of his wife: 7 *Harris* 410; 2 *Bl. Com.* 127. His interest in the estate, and his power over it, imposes upon him the duty of protecting and defending it. Like joint tenants, tenants in common, and tenants in dower, he is prohibited from doing anything to the injury of those who have a common interest with him in the title. Neither can purchase an outstanding title against the other. With equal, if not greater reason, each is prohibited from doing any act by which the estate of the other may be unjustly defeated. It follows from these principles that if the deed of 16th February, 1799, from Henry Church and Jane his wife to Joseph Archer, was merely a conveyance in trust, to enable Archer to take out a patent for the use of the grantors; and, if Henry Church afterwards, instead of enforcing the due execution of the trust, participated in the breach of it, by which the estate was conveyed to Hook without notice of the trust, for a consideration beneficial to Church himself, it was an act of bad faith which rendered him liable in equity to make restitution. It is true that the estate itself could not be taken from a *bona fide* purchaser without notice of the trust. Nor could it be defeated in the hands of a purchaser with notice from one who had bought without. But if the original violator of a trust repossesses himself of an estate thus conveyed, the original equity will reattach to it in his hands: 1 *Story's Eq.* § 410;

[Church *v.* Church.]

1 *Sch. & Lefroy* 379; Bovey *v.* Smith, 1 *Vernon* 60; s. c. *Id.* 84; 1 *Cruise Dig.* tit. 12, ch. 4, § 12. The husband who aids in the violation of a trust for his wife, upon a consideration of profit to himself, stands in the same predicament. Although Henry Church was a *cestui que trust* to the extent of his own interest, his power over his wife, and his interest and power over her estate, placed him in the relation of a trustee for her to the extent of her interest. In a case of this kind, it matters not whether the consideration received for violating the trust was equal to that paid on the repurchase of the estate, or whether the repurchase was made with the profits arising from the original wrong, or with other funds. In either case the moment the estate came back into the hands of the wrongdoer the original equity reattached. In this view of the case, it is plain that the instruction given on the question under consideration did the plaintiffs in error no injury. It was quite as favourable as they had a right to require.

The other assignment of error is neither specified according to the rules of Court, nor sustained by law.

Judgment affirmed.